| | | |
|---|---|---|
| STATE OF SOUTH DAKOTA | ) | IN CIRCUIT COURT |
| | ) | |
| COUNTY OF SHANNON | ) | SEVENTH JUDICIAL CIRCUIT |

HOWARD PRETENDS EAGLE,      )

                         )    *56 CIV 06-100*

    Plaintiff,           )    Civ. 06-___

                         )

v.                          )

                         )

SEDGWICK CLAIMS MANAGEMENT   )

SERVICES, INC., and            )

FIRST AMERICANS INSURANCE     )

SERVICE, INC.,              )

                         )

    Defendants.          )

                         )

Fall River County, SD
FILED
IN THE CIRCUIT COURT

**AUG 1 6 2006**

Carol E. Foster, Clerk

By_____Deputy

## COMPLAINT

1.    Howard Pretends Eagle is an officer of the Oglala Sioux Tribal Police, and an employee of the Oglala Sioux Tribe ("OST") Public Safety Commission.

2.    Officer Pretends Eagle resides on the Pine Ridge Indian Reservation.

3.    Defendants are citizens of a state other than South Dakota.

4.    First Americans Insurance Service, Inc. ("First Americans") sold occupational injury insurance to the Oglala Sioux Tribe ("OST") Public Safety Commission.

5.    Officer Pretends Eagle, as an employee of the OST Public Safety Commission, is a beneficiary of the insurance contract, and is owed the same duties that defendants owe the OST Public Safety Commission.

6.    Sedgwick Claims Management Services, Inc. ("Sedgwick") is hired by First

**EXHIBIT A**

Americans as the administrator of claims made under the policy.

7.     On March 6, 2006, while doing his job patrolling on the Pine Ridge Indian Reservation, Officer Pretends Eagle was severely injured in a one-car motor vehicle accident.

8.     Officer Pretends Eagle's injuries include a left tibial fracture, a left acetabulum fracture, a left humeral fracture, left brachial plexus palsy, left perineal paralysis, respiratory distress, moderate depression, inability to walk, pain, disability, and emotional distress.

9.     Officer Pretends Eagle is entitled to benefits under the policy, including medical and rehabilitation expenses and disability benefits.

10.     Officer Pretends Eagle needs in-patient rehabilitation treatment, but is unable to obtain it because defendants denied benefits.

11.     Whether Officer Pretends Eagle regains the ability to walk, and if so to what extent, depends in part on whether he obtains in-patient rehabilitation treatment, and if so, how soon he obtains it; the sooner he obtains it, the more function he is likely to regain.

12.     Officer Pretends Eagle claimed benefits under the policy.

13.     Officer Pretends Eagle was and is entitled to benefits under the policy.

14.     First American, acting through Sedgwick, denied Officer Pretends Eagle's claim for benefits.

15.     Defendants had no reasonable basis for denial of the claim.

16.     Defendants knew there was no reasonable basis for denial, or acted in reckless disregard of the lack of a reasonable basis for denial .

2

17.     Defendants initially denied benefits on two grounds.

18.     One initial ground for denial was that Officer Pretends Eagle, at the time of the accident, was driving too fast.  This is not a reasonable ground for denial of benefits.

19.     Defendants later re-stated the grounds for denial of benefits and eliminated alleged excessive speed as a ground for denial of benefits.

20.     The policy contains two contradictory sentences with respect to denial of benefits for violation of safety rules.  The first sentence provides that benefits may be denied "[i]f the injury follows repeated documented violations of work rules"; the second sentence provides that benefits may be denied "[i]f the injury resulted from a documented violation of safety policies, determined after a thorough investigation by the Safety Director."  Since these sentences are contradictory, the sentence more favorable to the insured controls.  Defendants never provided any evidence, or made any assertion, that Officer Pretends Eagle's injury followed "repeated documented violations of work rules."

21.     Officer Pretends Eagle, through counsel, submitted a report by Anne Stodola, M.S., P.E., of Ponderosa Associates, Limited, showing that there is no reasonable factual basis for the claim that Officer Pretends Eagle was driving too fast.

22.     Defendants' other ground for denial of benefits, which remains their ground for denial of benefits today, was that Officer Pretends Eagle was not in the course and scope of his employment at the time of the accident.  This is not a reasonable ground for denial of benefits.

3

23.     Defendants' theory as to why Officer Pretends Eagle was not in the course and scope of his employment at the time of the accident was that Officer Pretends Eagle was supposed to be stationed at the Jail in Kyle, not driving a patrol vehicle.

24.     Officer Pretends Eagle was hired as a Patrolman.

25.     Officer Pretends Eagle was evaluated as a Patrolman on February 9, 2006, less than a month before the accident.  He received above-average ratings.  His supervisor described him as a "highly dedicated officer."

26.     When Sedgwick investigated the claim, it obtained a computer log of Officer Pretends Eagle's patrol activities on the date of the accident.

27.     The computer log showed that on the date of the accident, Officer Pretends Eagle was in regular communication with headquarters, working normally as a patrolman. His last radio communication prior to the accident was "All is well in God's country." There is no indication that he was out on some kind of joyride, in fact the computer log shows the opposite.

28.     At no time did anyone tell Officer Pretends Eagle on March 6, or at any other time, that he was not supposed to patrol, or was not supposed to be a Patrolman.

29.     Officer Pretends Eagle, through counsel, asked Sedgwick to obtain the computer log for the month prior to the injury, to show that after February 9, 2006, when he was evaluated as a Patrolman, he was actually working as a Patrolman, not stationed at the Kyle Jail as Sedgwick contended.

4

30.    Sedgwick refused to obtain these computer logs.

31.    Officer Pretends Eagle, through counsel, obtained these computer logs by means of an order issued by the Oglala Sioux Tribal Court, and provided them to Sedgwick.

32.    The computer logs show that Officer Pretends Eagle was functioning regularly as a patrolman in February, 2006, and early March, 2006, performing duties such as patrolling, assisting an elderly man, traveling between Wanblee and Kyle, providing assistance to citizens, dealing with disturbances, transporting prisoners, assisting with traffic hazards, checking icy roads, checking on the welfare of reservation residents, assisting with a child custody matter, serving civil process, making routine communications, assisting with an accident, assisting a person walking on the road, and other similar duties.

33.    The computer log shows that on Friday, March 3, his last working day before the accident, Officer Pretends Eagle was assigned to the Eagle Nest beat.

34.    The Eagle Nest beat includes Wanblee.  A policeman's "beat" is defined in a standard dictionary as his "assigned or regular path or habitual round."

35.    On Sunday evening, March 5, Officer Pretends Eagle was called by his employer and told to report at midnight to begin duty on Sunday, March 6.

36.    Officer Pretends Eagle duly reported at midnight for duty at the Eagle Nest beat, Wanblee substation, the place where he customarily reported for duty.

37.    Consistent with his usual practices and duties, he got in his patrol car and went out patrolling, and continued to do so until the accident.

5

38.     Defendants denied the claim based on a seriously inadequate investigation.]

39.     After defendants denied Officer Pretends Eagle's claim, he obtained counsel.

40.     Counsel made several requests for defendants to remedy their seriously inadequate investigation; counsel asked defendants to obtain specific information which would show that benefits should be granted, but defendants refused to do so.

41.     On June 1, counsel requested Sedgwick obtain the computer logs for the month prior to the injury, as described above, but Sedgwick refused.

42.     On the same day, counsel requested Sedgwick obtain Officer Pretends Eagle's personnel file, for the same purpose, but Sedgwick refused.

43.     On June 8, counsel requested Sedgwick provide color photocopies of the original photographs of the accident scene, and all scene measurements and other documents created by the highway patrolman who investigated the accident, but Sedgwick refused.

44.     Sedgwick wrote counsel on June 12, reiterating defendants' denial of benefits and refusing to obtain further information.

45.     On June 13, counsel wrote Sedgwick, explaining the need for the additional information to remedy a seriously incomplete investigation, and explaining why he needed the documents previously requested.

46.     On June 14, counsel advised Sedgwick that photographs of the scene were taken by Sgt. Guthridge of the OST police department, and that the OST police department still has copies of these photographs, and asked Sedgwick to obtain these from the insured

6

and provide counsel with copies, but Sedgwick refused.

47.     On June 16, counsel advised Sedgwick that Officer Brave, as well as Sgt. Guthridge, of the OST police department, took or may have taken photos of the scene, and asked Sedgwick to obtain copies, but Sedgwick refused.

48.     On July 28, after counsel obtained the prior month computer log records through a subpoena, he provided them to Sedgwick, and asked defendants to reconsider their denial of benefits, explaining that Officer Pretends Eagle's medical situation was still very difficult, that Officer Pretends Eagle had to postpone a medical trip to Denver because of lack of adequate transportation, that he could not be admitted for inpatient rehabilitation treatment because of lack of insurance, that he does not have adequate care or assistance at home, and that rehabilitation needs to begin as soon as possible after a serious injury.

49.     Defendants refused to reconsider their denial of benefits, and refused to respond to counsel's request.

50.     On August 4, when counsel obtained the report from Anne Stodola, P.E., M.S., he provided it to Sedgwick, and again asked defendants to reconsider their denial of benefits, explaining that Officer Pretends Eagle is at home in a wheelchair unable to walk, cannot use his left arm, and needs surgery.

51.     Defendants refused to reconsider their denial of benefits, and refused to respond to counsel's request.

52.     From the time of Officer Pretends Eagle's injury until the present, defendants

7

have falsely claimed that they insure the OST Public Safety Commission based on a law of the Oglala Sioux Tribe, the Tribal Occupational Injury Ordinance, which allegedly establishes a specific, exclusive procedure under which claims may be brought.

53.    The Oglala Sioux Tribe has never enacted a Tribal Occupational Injury Ordinance.

54.    Defendants are well-aware that the Oglala Sioux Tribe has never enacted a Tribal Occupational Injury Ordinance.

55.    On April 24, counsel for Officer Pretends Eagle asked Sedgwick for a copy of the alleged Tribal Occupational Injury Ordinance.  At the same time, counsel provided Sedgwick with copies of the Oglala Sioux Tribe Law and Order Code, which include no reference to a "Tribal Occupational Injury Ordinance," or any indication that a "Tribal Occupational Injury Ordinance" is part of OST law.

56.    On May 2, Sedgwick sent counsel a copy of the alleged Tribal Occupational Injury Ordinance.

57.    The face of the document shows that the document was "adopt[ed]" by the OST Department of Public Safety, not enacted by the Oglala Sioux Tribe.

58.    Any person of ordinary intelligence knows that a police department cannot enact its own laws.

59.    On May 9, counsel wrote Sedgwick asking whether defendants claim that the Oglala Sioux Tribe ever adopted this document as an ordinance, and if so, asking defendants

8

to provide documentation.

60.     On June 1, counsel wrote Sedgwick, providing it with a letter from Clarice Mesteth, the "Data Researchist" of the Oglala Sioux Tribal Secretary's Office, stating that she has worked there for twelve years and that "I do not have any information on a Tribal Occupational Injury Ordinance, I have never heard of this ordinance or come across it."

61.     Counsel asked defendants, in light of this statement by Ms. Mesteth, to send him any evidence it has that the "Tribal Occupational Injury Ordinance" was adopted by the Oglala Sioux Tribe.  Defendants refused to respond to this request, as well as to a followup request on June 13.

62.     On April 24, May 1, June 1, and June 13, counsel asked Sedgwick for a copy of the insurance policy, but Sedgwick refused to respond to all these requests.

63.     The insurance contract (the so-called "Tribal Occupational Injury Ordinance") purports to prescribe a specific, exclusive procedure under which claims may be brought, and defendants told Pretends Eagle that any claim must be brought under this procedure.

64.     Under the procedure the contract purports to require, claimant must request reconsideration by the administrator (Sedgwick), and if this is denied, claimant may request a hearing from the Worker Appeal Committee.

65.     Pretends Eagle, through counsel, requested reconsideration by the administrator, which Sedgwick denied.

66.     Sedgwick advised Officer Pretends Eagle that, since it had denied

reconsideration, he could request a hearing before the Worker Benefit Committee, and that he must send his request to the OST Department of Public Safety, Attention Jenna Lopez, within 14 days, or that his claim would be forever barred.

67.     Officer Pretends Eagle duly and timely requested a hearing by letter to the OST Department of Public Safety, Attention Jenna Lopez.

68.     The insurance contract (the so-called "Tribal Occupational Injury Ordinance") provides that "in no event will an employee be deprived of a hearing for more than forty-five (45) days after the Worker Appeal Committee's receipt of [the] written hearing request, unless an extension of time has been filed by a party."

69.     Officer Pretends Eagle's request for hearing was made by certified mail, which was received and signed for on behalf of the OST Department of Public Safety on May 10.

70.     More than 90 days have elapsed since the OST Department of Public Safety received Pretends Eagle's request, and no action has been taken on it.

71.     No "Worker Benefit Committee" exists, or has ever existed.

72.     No "Worker Appeal Committee" exists, or has ever existed.

73.     The remedy purportedly provided under the contract is illusory.

74.     Pretends Eagle has attempted to exhaust the remedies purportedly required by the contract.

75.     Exhaustion of remedies purportedly required by the contract, if it otherwise would be required, is waived because the OST Department of Public Safety has not acted on

10

Officer Pretends Eagle's appeal within the allotted 45 days.

76.     Exhaustion of remedies purportedly required by the contract, if it otherwise would be required, is waived because the remedies do not exist because there is no "Worker Appeal Committee" or "Worker Benefit Committee."

77.     Exhaustion of remedies purportedly required by the contract, if it otherwise would be required, is waived by defendants' bad faith attempt to pass the contract off as a tribal ordinance, bad faith failure to investigate, and bad faith denial of benefits.

78.     Exhaustion of remedies purportedly required by the contract, if it otherwise would be required, is waived for other reasons as well.

79.     Defendants owed a duty of good faith and fair dealing to Pretends Eagle.

80.     Defendants breached their duty of good faith and fair dealing by the conduct set out above, and by:

      a.     Denying coverage in the absence of any good faith basis for doing so;

      b.     Failing to give equal consideration to the interests of their insured;

      c.     Attempting to avoid their responsibility to provide benefits according to the policy and law; and

      d.     Failing to timely investigate or conduct reasonable inquiries which would establish coverage, despite Officer Pretends Eagle's repeated pleas for them to do so.

81.     Defendants acted with malice, oppression, and deliberate and reckless disregard for Officer Pretends Eagle's rights and health.

82.     First Americans' legal duties to Pretends Eagle are non-delegable.

83.     Sedgwick is the duly authorized agent of First Americans, and at all relevant times acted as such, and acted within the course and scope of its authority.

84.     Defendants aided and abetted each other in providing and administering the policy at issue here, by providing material assistance and encouragement to each other.

85.     Defendants aided and abetted each other in the actions and failures to act described herein, by providing material assistance and encouragement to each other.

86.     Defendants caused, and continue to cause, Officer Pretends Eagle great suffering, physical pain, emotional distress, and financial loss including denial of benefits under the policy and attorney fees.

87.     Officer Pretends Eagle is entitled to an award of punitive damages as the only way to deter defendants from continuing to employ these same methods and tactics against other injured people.

88.     Every day which passes without Officer Pretends Eagle receiving the medical benefits he is due under the policy is one more day that he cannot have the inpatient rehabilitation treatment that he needs as soon as possible to try to restore his ability to walk, and one more day that he suffers at home with furnishings, including his bed and commode, which are totally inadequate in light of his injuries and disabilities.

## Count One [Contract]

89.     Pretends Eagle realleges everything said above.

12

90.   First American is liable to Pretends Eagle for benefits under the policy.

Count Two [Bad Faith]

91.   Pretends Eagle realleges everything said above.

92.   Defendants are liable to Pretends Eagle for bad faith.

WHEREFORE, Pretends Eagle requests benefits under the policy, attorney fees under SDCL 58-12-3, compensatory damages, punitive damages, and such other and further relief as the court deems just.

Dated: August 15, 2006

JAMES D. LEACH
Attorney at Law
1617 Sheridan Lake Rd.
Rapid City, SD 57702
(605) 341-4400

MICHAEL ABOUREZK
Abourezk Law Firm
PO Box 9460
Rapid City, SD 57709
(605) 342-0097

Attorneys for Plaintiff

By: _____
JAMES D. LEACH

DEMAND FOR JURY TRIAL

Plaintiff respectfully demands a jury trial.

_____
JAMES D. LEACH

13